## Kingsbury v. Overholt

*John A. Van Luvanee,* for plaintiffs.
*George Willner,* for defendant.

BECKERT, *J.,* December 19, 1974—The question before us in the instant matter is whether plaintiffs' complaint sets forth a cause of action by pleading the necessary elements of the tort of intentional interference with a prospective contractual relationship.

The factual background of this case, as pleaded in plaintiffs' complaint, arises out of a situation involving the sale of a parcel of land formerly owned by Joseph E. Cloak and Catherine, his wife (Cloak). Darwin S. Overholt (Overholt), defendant, acted as agent for the Cloaks in the sale of the land. Stuart Kingsbury, Jr., and Dale F. James (plaintiffs) submitted an agreement of sale to Overholt wherein plaintiffs were listed as buyers and James & Kingsbury Associates (Associates), a partnership engaged in the real estate business, was to receive a commission equal to three percent of the sale price as a cooperating broker. The complaint, as will be spelled out in more particulars, concludes that

Overholt actively and wrongly interfered with the prospective contractual relationship between plaintiffs and Cloaks thereby depriving plaintiffs of the opportunity to purchase the real estate (which real estate, according to the complaint, had a market value substantially in excess of the listing price and the value at which the realty had been appraised by Overholt) and further depriving Associates of a commission which it would be entitled to receive had the agreement of sale been consummated.

It is obvious that the complaint was drawn with an eye on the case of Glenn et al. v. Point Park College, 441 Pa. 474 (1971). In the Glenn case the Supreme Court recognized the tort of intentionally inducing a third person not to enter into or continue a business relation with another. That case set forth a factual situation somewhat similar to the instant case. In Glenn plaintiffs were real estate brokers who brought an action seeking damages from a buyer of real estate who negotiated a direct purchase from the seller, interfering with a prospective economic gain by plaintiffs—the anticipated commission of plaintiffs from the seller. Preliminary objections were filed by defendant and, on appeal from the action of the lower court sustaining the preliminary objections, our Supreme Court indicated that in order to set forth a valid cause of action it was necessary that the complaint disclose four elements:

(1) a prospective contractual relationship between vendor and plaintiffs;

(2) the purpose or intent to harm plaintiffs by preventing the relationship from occurring;

(3) the absence of privilege or justification on the part of the actors; and

(4) the occurrence of actual harm or damage to plaintiffs as a result of actor's conduct.

It is defendant's contention that no cause of action is presently stated as the third element, namely "the absence of privilege or justification on the part of the actor," is lacking.

In Glenn, supra, at 482, the court quoted from Harper & James, The Law of Torts, §6.11:

"'. . . where, as in most cases, the defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff, a line must be drawn and the interests evaluated. This process results in according or denying a privilege which, in turn, determines liability.' What is or is not privileged conduct in a given situation is not susceptible of precise definition. Harper & James refer in general to interferences which 'are sanctioned by the "rules of the game" which society has adopted,' and to 'the area of socially acceptable conduct which the law regards as privileged.'"

The framers of sections 767 and 768 of the Restatement of Torts had the language of Harper & James in mind when drafting the two sections. Section 767 provides:

"In determining whether there is a privilege to act in the manner stated in §766, the following are important factors:

"(a) the nature of the actor's conduct,
"(b) the nature of the expectancy with which his conduct interferes,
"(c) the relations between the parties,
"(d) the interest sought to be advanced by the actor and
"(e) the social interest in protecting the expect-

ancy on the one hand and the actor's freedom of action on the other hand."

Section 768—Privilege of competitor, provides:

"(1)  One is privileged purposely to cause a third not to enter into or continue a business relation with a competitor of the actor if

"(a)  the relation concerns a matter involved within the competition between the actor and the competitor, and

"(b)  the actor does not employ improper means, and

"(c)  the actor does not intend thereby to create or continue an illegal restraint of competition, and

"(d)  the actor's purpose is at least in part to advance his interest in his competition with the other."

We find that we need not look farther than (b) above to bring about our dismissal of defendant's demurrer. Admitting as true, as we must for purposes of these preliminary objections, all well-pleaded material facts set forth in the complaint as well as all inferences deducible therefrom (Sacred Heart Hospital v. Lanshe, 445 Pa. 57 (1971); Clevenstein v. Rizzuto, 439 Pa. 397 (1970), we find plaintiffs' complaint to factually relate that while defendant was a competitor, nevertheless he employed improper means to prevent plaintiffs from entering into a contractual relationship with the sellers which ultimately culminated in defendant, and not a third person, acquiring the realty.

Among other matters pleaded was that defendant did not promptly submit plaintiffs' agreement of sale, which agreement was for the full asking price and without conditions attached. Defendant held this agreement so that another prospective buyer

could procure a mortgage "so that he (Overholt) could present an agreement of sale without contingencies." See paragraph 14(a) of plaintiffs' complaint. It is further averred that Cloak entered into an agreement of sale with an individual identified as Arlington Myers and plaintiffs advised Overholt that they were willing to purchase the executed agreement of sale from Myers "for an additional $1,000" (paragraph 10). Overholt informed plaintiffs that Myers was not interested in selling this agreement of sale (paragraph 16). Paragraphs 17 to 21 of the complaint set forth that the Cloaks, on or about June 15, 1973, released Myers from the agreement of sale; that Joseph Cloak died on July 6, 1973, and the realty in question was conveyed from the surviving wife to defendant Overholt thereafter; that Overholt received a commission equal to six percent of the selling price of the sale and that plaintiffs received no notice from defendant Overholt of the termination of the Myers agreement and the fact that the realty was once again available for purchase despite Overholt's knowledge that plaintiffs were interested in purchasing the property.

We, therefore, conclude that the complaint sufficiently avers a factual situation that would, if proved, fall within subsection (b) of section 768(1) of the Restatement of Torts and accordingly dismiss the demurrer.

Defendant's additional preliminary objections are also dismissed on the strength of the Glenn case. As to defendant's preliminary objection alleging that allegations of plaintiffs' complaint are scandalous and impertinent, we can only note that this is an overall objection to the complaint and does not set forth any particular paragraph or parts

thereof to which defendant complains. Therefore, for reasons of lack of specificity, and for the reason that a complaint to plead a tort of this nature must be detailed in its factual averments to escape dismissal for its failure to state a cause of action, we likewise dismiss defendant's motion to strike.

We, therefore, enter the following

### ORDER

And now, December 19, 1974, defendant's preliminary objections are dismissed. Leave is granted to defendant to file an answer to plaintiffs' complaint within 20 days from the date hereof.