Anthony GINGRAS

v.

**GENERAL ELECTRIC COMPANY and Local 119, International Union of Electrical, Radio and Machine Workers.**

**Civ. A. No. 77–315.**

United States District Court, E. D. Pennsylvania.

July 6, 1979.

John J. Gallagher, Philadelphia, Pa., for plaintiff.

Francis J. Connell, II, Philadelphia, Pa., for General Electric.

Joseph E. Finley, Princeton, N. J., for Union Local 119.

## OPINION

DITTER, District Judge.

This action for compensatory and punitive damages and injunctive relief was brought by plaintiff, Anthony Gingras, against his employer, General Electric Company (General Electric), and the labor union of which he is a member, Local 119 of the International Union of Electrical, Radio and Machine Workers (Local 119). The jurisdiction of this court is invoked under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, and, with respect to associated state tort claims, under the doctrine of pendant jurisdiction. See *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Both defendants filed motions for summary judgment which, by previous orders, I granted as to General Electric and denied as to Local 119. The purpose of this opinion is to explain those orders.

Plaintiff has been an employee of defendant General Electric since 1951, rising in the ranks to the position of "group leader" by 1969. In 1974, plaintiff accepted a management position as a foreman. At all relevant times prior to July 1, 1974, when he began work as a foreman, plaintiff was a member of defendant Local 119. In 1976, plaintiff "received notification by the Company that he was to be displaced as foreman" and returned to a group leader position, replacing R. Schofield. This would have had the effect of "bumping" Mr. Schofield, a group leader with less seniority. The transfer was allegedly pursuant to Article XI, paragraph 3, of the collective bargaining agreement then in force between General Elec-

tric and Local 119. Plaintiff contends that upon learning of the pending transfer, Local 119 objected, threatening to strike if it occurred, and that "[b]ecause of the Union's threat to strike over the Gingras job placement, the Company rescinded the Gingras transfer." Plaintiff asserts that this strike threat was "clearly a violation of the collective bargaining agreement," and that as a result of the company's response to the threat, plaintiff was forced "to either accept a much lower job classification or enter the ranks of the unemployed" and thus suffered a substantial loss of earnings. Finally, plaintiff maintains that Local 119 refused to process the grievance which he sought to file concerning this matter after he accepted the lower-paying job and returned to the bargaining unit. Defendants deny that a strike threat was made, although they do admit that the union objected to Gingras' bumping Schofield. The factual data before me concerning this issue was inconsistent and inconclusive. Therefore, for the purposes of these motions, I gave plaintiff the benefit of the doubt on the matter, see *Friedman v. Thorofare Markets*, 587 F.2d 127, 131–32 (3d Cir. 1978), and assumed that such a strike threat was in fact made.

Plaintiff's complaint consists of four counts: one against defendant General Electric for violation of the collective bargaining agreement; one against defendant Local 119 for violation of its duty of fair representation as imposed by § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), see *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953); and one against each defendant for the common law torts of interference with business relations and intentional infliction of emotional distress. I will review the merits of each defendant's motion for summary judgment separately.

### Defendant General Electric

■ Plaintiff argued that General Electric's conduct constituted a violation of Article XI, paragraph 3, of the collective bar-

gaining agreement then in force between the company and Local 119. In relevant part this paragraph states: "Employees who . . . are transferred to jobs outside the bargaining units may be returned to their former classification in the bargaining unit in accordance with their total length of continuous service. . . ." Plaintiff asserted that this paragraph gave him a contractual right, which General Electric breached, to return to his former job classification. General Electric disagreed, arguing instead that the paragraph merely gave the Company the right, at its discretion, to return management employees to their former job classifications.

I concluded that General Electric's interpretation of the contract language was correct as a matter of law. The key word is "may," i. e., "Employees . . . *may* be returned to their former classification . . . ." (emphasis added). In ordinary usage, the word "may" usually implies permissive or discretionary conduct, not that which is mandatory. It is used to express ability, contingency, possibility, or potentiality. It is always used in the permissive sense unless context makes necessary a mandatory effect. 57 C.J.S. 456–57. See also The American Heritage Dictionary of the English Language 808 (1969). An examination of the collective bargaining agreement demonstrates that its drafters knew how to provide mandatory language when that was their intent, having clearly done so by the word "shall," or "will," (Article I, II, III, IV, V, VI, VII, VIII, IX, and X, for example.) They also knew how to provide for possibilities or for the granting of permission by the use of the word "may." (Article VII, para. 4; Article IX, para. 5(a), 5(b), and 5(c); Article IX, para. 7(a); and para. 8, for example).

In *Bryant v. International Union, United Mine Workers of America*, 467 F.2d 1 (6th Cir. 1972), the Court of Appeals for the Sixth Circuit considered language in a collective bargaining agreement which provided that a union committee "may" take certain actions and concluded that "use of the permissive 'may' rather than obligatory lan-

guage . . . clearly negatives the possibility that any duty was to be created" enforceable against the committee. *Id.* at 5. The contract language before me in the instant matter is similarly permissive, and imposes no duty on defendant General Electric to return plaintiff to his previous job classification. I therefore concluded there was no genuine issue as to any material fact and that as to count one, General Electric was entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). Because I concluded that summary judgment was appropriate for this reason, it was unnecessary for me to consider the merits of the other arguments raised by General Electric.

█ Having decided that I should grant General Electric's motion for summary judgment as to the only claim against it based on federal law, I was compelled to also grant the company's motion as to the pendant state law claims. Federal courts, as courts of limited jurisdiction, may not consider claims against pendant parties over whom they have no independent basis of federal jurisdiction. See *Aldinger v. Howard,* 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276, 286–87 (1976). I therefore dismissed the pendant state tort claims against defendant General Electric.[1]

### Defendant Local 119

Plaintiff contended that Local 119 violated the duty of fair representation it owed to him arising under section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), see *Vaca v. Sipes,* supra, by threatening to strike if he was returned to his previous classification in the bargaining unit and by refusing to process the grievance he sought to file thereafter. Plaintiff further alleged that this breach of duty by Local 119 constituted a violation of section 8(b)(1)(A) of the Act, 29 U.S.C. § 158(b)(1)(A). Local 119 argued that if the language in the collective bargaining agreement referring to the return of persons in plaintiff's circumstances to their previous classifications in the bargaining unit is merely permissive, "Gingras would have no contractual right to any job whatever in the bargaining unit" and could not be injured by the union's protests against his being returned as a group leader. This reasoning is not persuasive. The contract language in question permits, but does not require, the company to return an individual in Gingras' position to his former classification. Its presence in the contract, however, clearly suggests a grant of permission by Local 119 to General Electric to make such returns at its discretion. Since General Electric did in fact seek to exercise this option initially, I could not conclude as a matter of law that Local 119's protests and alleged strike threat did not injure plaintiff and did not constitute a violation of the duty to represent him fairly.

█ Local 119 further argued that at the time it allegedly engaged in this conduct, plaintiff was in management and neither within the bargaining unit nor a member of the union, and that it therefore owed him no duty of representation at all. In addition, Local 119 argued that, although defendant was within the bargaining unit and a member of the union when he filed his grievance, the union was justified in refusing to process the grievance because it concerned a situation in which "the interests of one or more employees is (sic) pitted against that (sic) of another." *Id.* at 8. To maintain successfully an action based on breach of the duty of fair representation, a plaintiff must allege and prove arbitrary, capricious, discriminatory, or bad faith conduct supported by evidence of "fraud, de-

---

1. Had I retained jurisdiction over these claims, I would nevertheless have granted defendant's motion for summary judgment as to both of them. Plaintiff alleges no material facts from which one could conclude that General Electric interfered with his business relationships or intentionally inflicted mental distress on him. The tort of interference with business relations, under the Pennsylvania laws applicable in this case, involves interference by a tortfeasor in a plaintiff's business relations with a third party. See Restatement, Second, of the Law of Torts § 766 (1965), which is favorably cited in *Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895 (1971). In the instant case, plaintiff does not allege the involvement of any third party in his complaint against General Electric.

ceitful action or dishonest conduct." *Humphrey v. Moore*, 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370, reh. denied, 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964); see *Vaca v. Sipes*, supra, 386 U.S. at 193, 87 S.Ct. at 918, 17 L.Ed.2d at 859 (1967); *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 956 (5th Cir. 1976). Since its conduct was intended "to protect the interests of Schofield and the men who worked under him," was entirely consistent with its past practice, and since plaintiff alleged no evidence of fraud, deceit, or dishonesty, Local 119 argued it was entitled to summary judgment as a matter of law.

■ Defendant's formulation of the burden which plaintiff must meet to be entitled to a favorable decision is correct. However, defendant's implied suggestion that, because it engaged in the disputed conduct openly, its conduct could not have been fraudulent, deceitful, or dishonest, and therefore could not support an action for breach of the duty of fair representation, is erroneous. Open but arbitrary conduct, if improperly motivated, may be found deceitful or dishonest and may give rise to an action for breach of duty. See *Vaca v. Sipes*, supra; *Tedford v. Peabody Coal Co.*, supra. See generally Clark, *The Duty of Fair Representation: A Theoretical Structure*, 51 Tex.L.Rev. 1119 (1973).

■ Conduct is not arbitrary, as a matter of law, if it is "(1) based on relevant, permissible union factors which excludes (sic) the possibility of it being based upon motivations such as personal animosity or political favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees." *Tedford v. Peabody Coal Co.*, supra at 957 (footnotes omitted). See *Wallace Corp. v. NLRB*, 323 U.S. 248, 255, 65 S.Ct. 238, 241, 89 L.Ed. 216, 227 (1944). Resolving all doubts and inferences in plaintiff's favor, as I had to for purposes of these motions, see *Friedman v. Thorofare Markets*, supra, I could not conclude that there existed no · issues of fact material to whether Local 119's relevant conduct was fair and impartial or alternatively was arbitrary and motivated by personal animosity or political favoritism. Plaintiff alleged that Local 119's conduct was inconsistent with past practice and cited examples of contrary practice. Defendant Local 119 denied any inconsistencies. Deposition testimony and documents in the record before me were incomplete and inconsistent on this point.

Plaintiff further alleged that defendant's conduct in this instance was based on political favoritism. He asserted that Local 119 opposed his return as a group leader because a union leader was part of the group of which he would have become leader and wanted Mr. Schofield to remain its leader. He cited a close personal friendship between Joseph Capecci and the president of Local 119, Joseph Egan, and special participation by Mr. Capecci in Local 119's preparation for this case, in support of his contention. He further asserted irregularities in the manner by which Local 119 presented its objections to General Electric, such as that no written grievance was ever prepared or submitted to the company by either Mr. Schofield or the union and that the subject was first broached orally at a meeting normally concerned only with second-step grievances. While these assertions and this evidence hardly constituted conclusive support for plaintiff's position, they were adequate to refute Local 119's suggestion that no material facts remained in issue. Summary judgment for defendant Local 119 on the count alleging a breach of the duty of fair representation, was therefore denied.

■ Plaintiff's complaint set forth a colorable claim cognizable under the tort law of Pennsylvania as interference with business relations. See *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971); Restatement, Second, of the Law of Torts, § 766 (1965). Since Local 119 failed to put forward any material arguments or evidence whatsoever addressed particularly to its motion for summary judgment as to this claim, that motion had to be denied.

Plaintiff's complaint also set forth a proper claim cognizable under Pennsylvania tort law as intentional infliction of emotional distress. See *Jones v. Nissenbaum, Rudolph, and Seidner*, 244 Pa.Super. 377, 368 A.2d 770 (1976); Restatement, Second, of the Law of Torts, § 46 (1965). This tort must be effected intentionally "by extreme and outrageous conduct," 368 A.2d at 772, and may not be based merely on the fact of employment discrimination unless "a function of the particularly abusive manner in which the discrimination is accomplished." *Farmer v. United Brotherhood of Carpenters and Joiners of America*, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338, 353 (1977). Defendant Local 119 urged that summary judgment should be granted to it as to this claim because it "acted responsibly at all times" and because plaintiff did not assert that it *intentionally* sought to inflict emotional distress on him. I did not agree. I assumed for purposes of this motion that the union issued a strike threat in order to deter General Electric from returning Mr. Gingras to his previous position as group leader. Such a threat might well constitute outrageous conduct or employment discrimination accomplished in an abusive manner. Further, while plaintiff does not allege that defendant sought to inflict emotional distress because of any pre-existing invidious dislike of him, he does assert that the allegedly harmful conduct was directed at him intentionally, albeit for reasons relating to union politics. Such an assertion, if proven, adequately establishes the element of intention required to maintain this action. See *Farmer*, supra.

For the foregoing reasons, defendant General Electric Company's motion for summary judgment was granted, and Local 119's motion for summary judgment was denied.