## Pfeffer v. Industrial Valley Bank & Trust Company

*Denis J. Lawler*, for plaintiff.
*Joan D. Katz*, for defendant.

BULLOCK, *J.*, December 12, 1979—The amended complaint in trespass herein charges defendant bank with slander and with unlawful interference with a contractual relationship between plaintiff and a third party, Gil-Tec. Preliminary objections to the original complaint were sustained in part and overruled in part by Honorable Theodore B. Smith, Jr. on August 31, 1979. The court held that the original complaint was deficient in that it failed to plead that the acts complained of were done "(a) with the specific intention of causing harm to plaintiff by interference with his professional employment" and "(b) under circumstances such as to render them unprivileged on part of defendant" and the court permitted amendment.

The present preliminary objections to the amended complaint aver that (1) it fails to correct the deficiency suggested by Judge Smith and (2) it fails to aver any actual words which were defamatory.

We believe that the amended complaint adequately sets forth the utterance complained of. A reading of the amended complaint and the exhibit attached thereto makes it abundantly clear that plaintiff is complaining of the words of Mr. Peyton Biddle, a branch manager of defendant, to a representative of Gil-Tec to the effect that the bank would not give Gil-Tec an increased line of credit unless it obtained an accountant acceptable to the branch manager. The questions before the court are whether the imposition of such a condition by defendant upon Gil-Tec was an unlawful interference with the business relationship between plaintiff and Gil-Tec and whether this imposition was slanderous.

Defendant, relying on Glenn v. Point Park College, 441 Pa. 474, 272 A. 2d 895 (1971), argues that the complaint herein does not adequately aver the intent required for an unlawful interference with a business relationship. As stated in that case, at p. 481:

"We then come to the second question, whether there is a sufficient allegation of specific intent. It must be emphasized that the tort we are considering is an intentional one: the actor is acting as he does *for the purpose of causing harm* to the plaintiff. As proposed comment d to the Tentative Draft of §766A of the Restatement (Second) Torts emphasizes, 'The defendant must not only have intended the interference, but must have acted in part at least for the purpose of accomplishing it.'" (Emphasis in original.)

In Glenn, the alleged tort was inducement of an owner of real estate to sell directly to the buyer, avoiding plaintiff real estate agent, who had originally shown the property to the buyer. The court held that intent had not been adequately pleaded but reversed a dismissal and remanded the case with leave to amend. The reasoning in Glenn suggests that the intent to harm need not be the exclusive motivation of a defendant. In that case, the intent to deprive plaintiff of a commission was simply an aspect of the intent to benefit financially from the lack of need for the seller to pay a commission. (The asking price through the agent was $790,000; defendant buyer actually purchased for $700,000, buying directly without plaintiff in the picture.) In the present case, we do not believe plaintiff must plead personal animosity against him; it is enough, in our view, that he plead that

defendant intentionally acted in such a way that it knew or had reason to know that it would harm plaintiff, even if such harm was not defendant's primary motive. In our view, he has so pleaded.

Whether or not an interference with a business relationship is lawful or unlawful is, in our view, a complex question. There are all kinds of interference with present and prospective business relationships occurring every day. Indeed, the very concept of free private enterprise contemplates that business people will try to obtain business formerly given to others. The concept of competition implies that a business person will make every effort to be more attractive than his or her competitors and thereby attract business that would otherwise have gone elsewhere. Generally speaking, there is in this country a public policy against conduct which tends to stifle or minimize free economic competition. The antitrust laws are the most obvious example of this policy. Moreover, the law has drawn various lines in determining to what extent economic power may be used indirectly by a party to influence business relationships among others. Laws against secondary boycotts exemplify this concern of the law.

Restatement, 2d, Torts, §767, addresses the issue as follows:

"In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the

social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."

This section is quoted with approval by our Supreme Court in Adler, Barish, Daniels, Levin and Creskoff v. Epstein, Weisbord, Wolf and Jablon, 482 Pa. 416, 432, 393 A. 2d 1175 (1978). The court, in that case, also quoted Glenn, supra, as follows:

" 'The absence of privilege or justification in the tort under discussion is closely related to the element of intent. As stated by Harper & James, The Law of Torts, §6.11, at 513-14: ". . . where, as in most cases, the defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff, a line must be drawn and the interests evaluated. This process results in according or denying a privilege which, in turn, determines liability." What is or is not privileged conduct in a given situation is not susceptible of precise definition. Harper & James refer in general to interferences which "are sanctioned by the 'rules of the game' which society has adopted," and to "the area of socially acceptable conduct which the law regards as privileged," id. at 510, 511, and treat the subject in detail in §§6.12 and 6.13.' "

Section 767, supra, and our Supreme Court both in essence proclaim the relevancy of the totality of circumstances. They suggest a balancing of concerns in applying "The 'rules of the game' which society has adopted." Whether or not defendant's

conduct is legally acceptable may not, therefore, be resolved in the relative vacuum of simply a complaint.

Defendant cites in support of its position Geary v. United States Steel Corp., 456 Pa. 171, 194, 319 A. 2d 174 (1974). Geary, however, is clearly distinguishable. In that case, an executive employe sued his employer for alleged wrongful discharge after a disagreement between the executive and his superiors as to the safety of a product being sold. Our Supreme Court ruled in a 4-3 decision that no cause of action had been alleged. The court specifically found that the cases involving interference by third persons in a contractual relationship were not apposite. The court found that the employer did in fact have the privilege of discharging the executive at will as long as the discharge did not violate the law (as for example, a discharge for religious or racial reasons would have done). In his dissenting opinion, Mr. Justice Roberts would have had the court recognize "a cause of action for wrongful discharge where the dismissal offends public policy."

The present case, like Geary, raises a significant public policy issue. Should a bank or group of banks, by requiring borrowers to use an accountant on a favored list established by the bank or banks, be able to shut out from considerable lucrative work those accountants not on the favored list? In posing this question, we note that plaintiff is a certified public accountant, which means that he had certainly met the basic qualifications of his profession. There is no suggestion in this case that defendant considered plaintiff unqualified or incompetent as an accountant, a fact which, at the same time, strengthens plaintiff's claim of unlawful interference and weakens his claim of slander.

We believe that the present case is the type of case in which a court should be very cautious about dismissing a complaint on preliminary objections. We feel as our Supreme Court did in Glenn, supra, when it stated, at p. 482:

"In the instant case the lower court clearly felt that the defendant's conduct as alleged in the complaint was within the privileged area: the defendant merely failed to be persuaded by plaintiffs to deal through them in seeking the purchase of the hotel, and chose instead to deal directly with Sheraton. This may be a fair inference from the pleading of what in fact occurred; on the other hand, it may be an oversimplification. Without more facts in hand, we deem it unwise to speculate. . . ."

It may be in the present case that defendant's conduct was simply a prudent business act in protection of its own interests. On the other hand, it may have been a form of abuse of economic power. At this point, we deem it unwise to speculate. Only after a full development of the facts at trial could an intelligent decision be made. We believe that the plaintiff in his complaint has alleged facts which adequately raise the issue of the legality of defendant's conduct.

Defendant's final contention is that the amended complaint does not state a cause of action in slander. We agree. There is nothing in the statement attributed to defendant that impugns the integrity or competency of plaintiff. Defendant's branch manager really said nothing about plaintiff at all, except that he was not among those in his special favor. Admittedly, plaintiff is adversely affected by defendant's position. However, the impact is not as

a result of defendant's making plaintiff look unworthy, but rather by defendant's use of its economic power to "freeze out" plaintiff. Defendant could have praised plaintiff to Gil-Tec, but if it had still insisted upon a change of accountants, plaintiff would still have felt the economic impact. We note, moreover, that in Gil-Tec's letter to plaintiff, attached to the complaint, there is nothing to indicate that as a result of defendant's stated guideline, Gil-Tec regarded plaintiff any less highly. Plaintiff was not held up to ridicule or contempt.

Ordinarily, one of the first questions asked in a response to a charge of slander is "Was what was said about the plaintiff true?" The attempt to answer that question in this case demonstrates that nothing was really said about plaintiff. We do not regard this case as comparable to the bank's making a widely publicized statement that it would not do business with Gil-Tec as long as Gil-Tec retained plaintiff. In the latter situation, the wide publication of such a statement in and of itself might well suggest that there was something wrong with plaintiff, or at least make people suspicious of him. In the present case, however, as far as the complaint discloses, the publication was only to Gil-Tec which had apparently found plaintiff a competent accountant for years and presumably continued to hold a positive opinion of plaintiff. The fact that plaintiff has pleaded that he "has been brought into scandal and reproach and has been held up to odium, scorn and contempt among his business acquaintances" and that he has been "greatly injured in his good name, credit and reputation" are simply conclusory statements inconsistent with the facts averred in the complaint. The harm which plaintiff

alleges was not the result of slanderous words, but was the result of defendant's exercise of its economic power. In our view, the sole question in this case is whether that exercise was lawful or unlawful.

## ORDER

And now, December 12, 1979, defendant's preliminary objections to plaintiff's allegations of slander in his amended complaint in trespass are sustained. All other preliminary objections are dismissed.