**UNITED STATES of America, Plaintiff,**

v.

**NORTH SUBURBAN MULTI–LIST, INC., Defendant.**

**Civil A. No. 72–499.**

United States District Court, W. D. Pennsylvania.

June 15, 1981.

4. It is assumed that the added defendant William John Siar, M.D., is a citizen of a state other than West Virginia.

Joan S. Huggler, Atty., Antitrust Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

C. Arthur Wilson, Jr., Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

On May 21, 1973, this Court entered a consent decree to which the petitioner, the United States, and the respondent, North Suburban Multi-List, Inc., (NSML) were parties. In that decree, as well as in the current by-laws of NSML, the respondent was described as a corporation whose purpose was to circulate among its members the property listings of its members of real estate for sale. Under the provisions of the 1973 decree, the respondent was enjoined from engaging in a variety of activities that would cause Pittsburgh area real estate brokers to fix prices for their service in violation of antitrust law. NSML was specifically required to

admit to membership any person duly licensed ... provided, however, that [NSML] may adopt and maintain nondiscriminatory written requirements for membership not inconsistent with [the consent decree].

The Court retained jurisdiction of this action for purposes of enforcing the consent decree.

On February 26, 1981, the United States filed a petition for an order to show cause why the respondent should not be held in criminal contempt for violating the provisions of the earlier consent decree. The petitioner alleged that NSML had denied the application for membership in NSML, of Ms. Joan Gill, a real estate broker who offered an alternative to traditional brokerage services at a price substantially less than the industry norm. After an answer was filed, the Court held a hearing on whether the respondent should be held in criminal contempt. Shortly after the hearing both parties moved the Court to consider the original petition as one for civil, rather than criminal contempt. That motion was granted.

At the hearing the parties stipulated that NSML was aware of the 1973 consent decree and that Ms. Gill's application for membership in NSML had been denied. The only issue in dispute was whether the rejection of Ms. Gill's application was in contravention of the consent decree. (Transcript pp. 8–9)

The evidence presented to the Court on April 16, 1981, establishes that in 1978 Ms. Gill was actively engaged in selling real estate. In her business, Ms. Gill offered two types of services to property owners desiring to sell their property. One service was the traditional real estate service; advertising the property, screening potential buyers, showing the property and providing assistance to buyers in need of financing. Ms. Gill charged six to seven percent of the total sales price as her fee for this service; a fee competitive with other brokers. (Transcript pp. 138, 147) The other service Ms. Gill offered was to assist, as a consultant, homeowners who would sell their own home in a "For Sale by Owner" program. Ms. Gill would share her experience in writing advertisements and setting a value on the property and locating financing for the buyer, and the property owner would answer all inquiries and show the property

himself. Ms. Gill would be compensated for her efforts at an amount substantially less than she, and others, charged for the more traditional service. (Transcript p. 138) Of the total number of Ms. Gill's clients, approximately one half chose each service.

In May of 1978, Ms. Gill filed an application for membership in NSML. She desired to place listings she obtained in the traditional portion of her business in an effort to expand this portion of her business. NSML requested Ms. Gill, as all applicants were requested, to come to an interview in June of 1978 with the directors of NSML. At that meeting Ms. Gill was asked to explain the functioning of her "For Sale by Owner" service. Ms. Gill explained that program and mentioned that her fee for that service was significantly below the industry norm for traditional brokerage services. While counsel for NSML mentioned that discussion of fees was improper, Ms. Gill had advertised her fees in local newspapers (Exhibit 13) and her fees for the "For Sale by Owner" program were no doubt known to the real estate professionals at the NSML meeting.

In August of 1978 Ms. Gill's application was denied by NSML. In response to her request, Ms. Gill was informed in October of 1978 that her application had been denied because the "For Sale by Owner" program was inconsistent with the purposes of a multi-list. At the hearing before this Court NSML pointed specifically to Articles II(E) and XXIV of the by-laws of NSML as reasons for denying Ms. Gill's application.

This Court is unpersuaded that Ms. Gill's application was denied for that reason. Members of NSML are required to list with NSML only those properties on which an exclusive listing has been obtained. Ms. Gill was ready, willing and able to follow that by-law. She intended to forward to NSML all her exclusive listings; listings obtained as part of her traditional real estate brokerage service. While Ms. Gill was

not going to forward to NSML the names of persons she had contracted with through the "For Sale by Owner" program, she was not obliged to do so. Richard Thomas the president of NSML, recognized that Ms. Gill did not obtain a "listing" under that program. (Transcript p. 79)

The respondent asserts that the "For Sale by Owner" program is inconsistent with the operation of a multi-list. Particularly, respondent contends that because Ms. Gill would not obtain exclusive listings for property she handled through her "For Sale by Owner" program, Article II(E) and XXIV of the by-laws of NSML would have been violated. Articles II(E) and XXIV provide that NSML is designed to obtain the selling efforts of all members and that frustration of that purpose by a member is improper. Assuming the "For Sale by Owner" concept is inconsistent with these by-law provisions, there are a number of significant other exceptions to the by-laws, exceptions indistinguishable from the "For Sale by Owner" program, which demonstrates that in invoking these two by-law provisions against Ms. Gill, NSML acted arbitrarily and discriminatorily. The by-laws of NSML have been construed to mean that if a member obtains a nonexclusive or "open" listing, that listing may not be listed with NSML. A member of NSML is subject to no sanction for having taken such a listing. Additionally, listings on vacant land, commercial property and large multi-unit dwellings as well as property partly owned by members need not be listed with NSML. (Transcript pp. 86–87, 116–117, Exhibits 14, 33 and 34.) This Court perceives no distinction between these activities and Ms. Gill's "For Sale by Owner" program. In this light, the rejection of Ms. Gill's application for membership in NSML can only be attributed to improper efforts to affect the price of brokerage services by placing Ms. Gill at a competitive disadvantage because she offered a lower priced alternative service.[1]

---

1. Respondent has urged this Court to find that Ms. Gill desired to join NSML to obtain a ready list of customers to whom she could promote her "For Sale by Owner" program and that Ms.

Gill would suggest to persons under exclusive contracts to other brokers to await termination of the listing agreement and then use the "For Sale by Owner" program. Such a finding

■ The foregoing establishes that NSML violated the provisions of the prior order of this Court by rejecting Ms. Gill's application for membership. NSML was, therefore, in contempt of this Court.

■ Having found NSML to be in contempt, this Court must consider an appropriate remedy. The two purposes of civil contempt are (1) to provide remedial or compensatory sanctions to compensate for the past disobedience or (2) to provide coercive sanctions to insure future compliance. *Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336 (3rd Cir. 1976). No evidence of damages sustained by the United States was introduced; thus compensatory damages are inappropriate. On June 4, 1981, NSML voted to dissolve: thus, there will be no future actions to coerce. In this situation the Court need take no further action.

The foregoing shall constitute findings of fact and conclusions of law under Fed.R. Civ.P. 52(a). An appropriate order will issue.

would be extremely speculative. The Court notes (a) that the names received by any broker from NSML would be of a person who had entered into binding listing agreement; (b) that upon expiration of a listing agreement between a member of NSML and the property owner, any and all members of NSML would be free to promote any type of service to the property owner; and (c) that Pennsylvania has recognized the tort of intentional interference with economic relations. *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971).