# Uber v. Exxon Corporation

*James D. Flower, Jr.*, for plaintiff.
*Robert C. Spitzer*, for defendant.

SHUGHART, *P.J.*, January 31, 1983 — Plaintiff is an operator of a gasoline service station located at the intersection of Carlisle Road and Lowther Street, Camp Hill. For the past 25 years he has sold gasoline and other products of defendant-corporation. Recently, however, the business relationship between the two parties soured to the point that plaintiff filed this suit, wherein he alleged wrongful acts on the part of defendant that caused damages to his business and his person. Plaintiff is relying on four different theories of recovery. Defendant has yet to answer these allegations, but instead has filed preliminary objections in the nature of a demurrer and a motion to strike,

## I

In count I of his complaint plaintiff has attempted to plead a cause of action for intentional interference with prospective contractual relations. In short, plaintiff alleges that defendant, by failing to deliver gasoline and by deliberately leaving plaintiff's business premises in a state of construction for an extended period of time, caused plaintiff to lose business and to suffer emotional and physical harm. The essence of defendant's objection is that plaintiff has failed to sufficiently aver that defendant's actions were not privileged.

The tort of intentional interference with a prospective contractual relation was expressly recognized by the Pennsylvania Supreme Court in Glenn v. Point Park College, 441 Pa. 474, 272 A.2d 895 (1971). Later, in Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466 (1979), the court set forth the four elements of the cause of action as follows:

(1) a prospective contractual relation;

(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual damages resulting from the defendant's conduct. Id. at 208, 412 A.2d at 471 (Footnote omited).

In pleading a prospective contractual relation, the plaintiff need only aver that such a relation was reasonably likely to occur. Glenn, supra. In other words, he must have had a realistic expectation, and not a mere hope, of a future contractual relation. Thompson, supra; Behrend v. Bell Telephone Co., 242 Pa. Super. 47, 363 A.2d 1152 (1976), vacated and rem'd on other grounds, 473 Pa. 320, 374 A.2d

536 (1977). The contractual relation need not stem from a formal contract; it is sufficient to aver interference with a continuing business relationship, such as that existing between retailer and customer. Restatement (Second) of Torts §766B comment c (1979).

Plaintiff has sufficiently averred such relationships in paragraph 69 of his complaint. There he alleged that "[he] has had well established business relationships with numerous customers in the geographical area of his service station." Further, he alleged that he had "a reasonable expectation of a continuation of those business relationships." Certainly it is hard to imagine what more plaintiff could have averred to meet the first element of the cause of action as set forth in Thompson. What appears is undoubtedly sufficient to overcome a demurrer.

Plaintiff has also adequately pled the second element of the cause of action, namely, the purpose or intent to harm plaintiff by preventing the prospective relation from occurring.* In paragraph 67 of his complaint plaintiff alleged that defendant's actions

---

* Some confusion exists as to the necessity of this element. At least two courts have held that a specific intent to harm the plaintiff is not required in Pennsylvania in an action for intentional interference with a prospective contractual relation, notwithstanding language to the contrary in Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174 (1974), and Glenn v. Point Park College, 441 Pa. 474, 272 A.2d 895 (1971). See Engine Specialities, Inc. v. Bombardier Ltd., 605 F.2d 1, 19-20 (1st Cir. 1979), cert. denied, 446 U.S. 983 (1980); Yaindl v. Ingersoll-Rand Co., 281 Pa. Superior Ct. 560, 581-82 n.11, 422 A.2d 611, 622 (1980). Nevertheless, in light of the explicit language in Glenn and the recent enunciation of this element in Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466 (1979), we believe the Supreme Court intends for this element to be pled and will require as much from plaintiff.

were "intentional and malicious," *"designed to cause* plaintiff inconvenience, anxiety and mental anguish, to cause him financial harm generally and to destroy his business." (Emphasis added.) Further, he alleged in paragraph 70 that the defendant's actions were *"taken with the purpose of harming* plaintiff by interferring [sic] with plaintiff's then present and prospective business relationship with his then present and future customers." (Emphasis added.) These are not bare allegations of intent and malice found inadequate in Glenn v. Point Park College, 441 Pa. 474, 272 A.2d 895 (1971), and Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174 (1974). Rather, they are allegations of specific intent to harm. They clearly meet the requirements of Glenn where the court specifically said that a plaintiff must allege that defendant acted *"for the purpose of causing harm* to the plaintiff." 441 Pa. at 481, 272 A.2d at 899 (Emphasis in original).

The next element provides the most fertile source of controversy between the parties. Under Glenn plaintiff's complaint must disclose "the absence of privilege or justification" on the part of defendant. 441 Pa. at 480, 272 A.2d at 898. Commenting on this element of nonprivilege in Yaindl v. Ingersoll-Rand Co., 281 Pa. Super. 560, 422 A.2d 611 (1980), the Superior Court stated the following:

"[S]aying that one is not liable for intentionally interfering with the performance of a contract because his acts were 'privileged' is no more than saying that a consideration of the factors listed in section 767 of the Restatement [(Second) of Torts] leads to the conclusion that the actor's interference was not improper in the circumstances of the particular case." Id. at 575, 422 A.2d at 619; see also id. at 581-82 n. 11, 422 A.2d at 622; Franklin Music Co. v. American Broadcasting Companies, Inc., 616

F.2d 528 (3d Cir. 1979). Defendant argues that the lack of privilege or justification has not been adequately pled by plaintiff, or in terms of the Restatement's latest formula, that plaintiff has not pled facts to support his claim that defendant's conduct was improper. We believe he has.

Section 767 of the Restatement sets forth the following noninclusive list of factors relevant in determining whether interference is improper:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties. Restatement (Second) of Torts §767 (1979).

Several of these factors are present in plaintiff's complaint. He has pled the special relationship that existed between him and defendant; the interests sought to be advanced by defendant by harming plaintiff's business; the extra contractual nature of defendant's conduct; and perhaps most importantly, defendant's motive. These factors may not lead to eventual liability, but they certainly are sufficiently pled to overcome defendant's demurrer. Disputes are to be decided on the merits, and not on technicalities of pleading. In the end it may be determined that defendant's conduct was justified or proper, but such a decision must await at least an answer by defendant.

Lastly, we find that the final element of the cause of action has been adequately pled. Plaintiff is burdened with pleading actual damage resulting from defendant's conduct, and he has done just that in paragraph 73 of his complaint. Therefore, all the elements of the cause of action for intentional interference with a prospective contractual relation have been pled, and the demurrer must be overruled.

Although we find, when viewing the complaint in the light most favorable to plaintiff, that a cause of action has been pled, we recognize that in the final analysis plaintiff may simply be seeking recovery for consequential damages resulting from defendant's alleged breach of contract. If so, tort recovery will be denied. See Efco Importers v. Halsobrunn, 500 F. Supp. 152 (E.D. Pa. 1980); Glazer v. Chandler, 414 Pa. 304, 200 A.2d 416 (1964). But since the distinction is often a fine one, our present doubts are resolved in favor of plaintiff.

## II

As a second theory of recovery plaintiff relies upon the tort of intentional infliction of mental distress. Pennsylvania has adopted the Restatement position relative to this tort. See Papieves v. Kelly, 437 Pa. 373, 263 A.2d 118 (1970); Forster v. Manchester, 410 Pa. 192, 189 A.2d 147 (1963); Banyas v. Lower Bucks Hospital, 293 Pa. Super. 122, 437 A.2d 1236 (1981); Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa. Super. 377, 368 A.2d 770 (1976). There are four elements to the action under section 46 of the Restatement: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Chuy

v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3rd Cir. 1979).

"[T]he gravamen of this tort is that the conduct complained of must be of an extreme or outrageous type." Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa. Super. 377, 383, 368 A.2d 770, 773 (1976). Accepting the plaintiff's version of the events, our duty, at this stage of the proceedings, is to determine, as a matter of law, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Kutner v. Eastern Airlines, Inc., 514 F. Supp. 553 (E.D. Pa. 1981); Restatement (Second) of Torts §46 comment h (1965). We find that it cannot.

The interpretive comments to section 46 of the Restatement, in expanding upon what is meant by "extreme and outrageous conduct," provides as follows:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Restatement (Second) of Torts §46 comment d at 73 (1965). Examples of the types of conduct required include the intentional and wanton acts of mishandling a decedent's body, Papieves v. Kelly,

437 Pa. 373, 263 A.2d 118 (1970), and the intentional misstatement of a decedent's cause of death, Banyas v. Lower Bucks Hospital, 293 Pa. Super. 122, 437 A.2d 1236 (1981).

The alleged actions of defendant fall well short of this type of conduct. Even assuming, as plaintiff has alleged, that defendant refused to deliver gasoline and to complete the construction work at plaintiff's business premises, such conduct could hardly be characterized as atrocious or outrageous, particularly in view of the contractual business relationship existing between the parties. See Cautilli v. GAF Corp., 531 F. Supp. 71 (E.D. Pa. 1982) (tort recovery for intentional infliction of mental distress generally not available in contract disputes). Recovery under this tort theory is not available to every plaintiff who has suffered emotional or mental distress as the result of another's otherwise tortious conduct. See, e.g., Forster v. Manchester, 410 Pa. 192, 189 A.2d 147 (1963). As a matter of law, this action pertains only to the most outrageous types of conduct. More is required than what is alleged in plaintiff's complaint; therefore, the demurrer will be sustained.

### III

As plaintiff's third theory of recovery he relies upon the tort of negligent infliction of emotional distress. He argues that even if defendant did not intend to harm him, it should nevertheless be held liable because its agents "should have known that their callous and abusive actions would cause him severe emotional distress and that this emotional distress might result in illness or bodily harm." Brief of plaintiff at 6. No cases have been cited to support plaintiff's position; he merely relies upon section 313 of the Restatement (Second) of Torts (1965).

Courts everywhere have wrestled with this tort theory and the limits to be placed on it. Disagreements over the interests to be protected and the nature of the harm necessary to sustain a cause of action are common. Nevertheless, most, if not all, courts agree with the commentators to the Restatement that the tort "does not give protection to mental and emotional tranquillity in itself." Id. comment a.

We see plaintiff's complaint as nothing more than an attempt to recover for an annoyance or aggravation stemming from a business dispute between him and defendant, Exxon. "The typical case involving physical harm resulting from emotional distress concerns a person who was put in fear for his own safety as a result of alleged negligence of the defendant." Dziokonski v. Babineau, 375 Mass. 555,  , 380 N.E.2d 1295, 1299 (1978). In Pennsylvania a cause of action has been found where the plaintiff, a mother, witnessed the death of her son when he was struck by a negligently driven automobile, Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979), and where a foster parent heard a loud thump and turned to see that her foster son had been struck by defendant's automobile, Kratzer v. Unger, 17 D. & C. 3d 771 (1981). We have failed to find any cases, nor has plaintiff directed our attention to any, in which a plaintiff was allowed to recover under this tort theory because he feared loss of business profits. The tort, in our judgment, is not so broad.

But even if section 313 is applied to the facts as pled by plaintiff, a cause of action is still found wanting. For a cause of action for negligent infliction of emotional distress to be sustained, physical harm is required. Banyas v. Lower Bucks Hospital, 293 Pa. Super. 122, 437 A.2d 1236 (1981). As evident by plaintiff's allegations, however, the only

physical harm that could possibly be connected to defendant's actions surfaced in the mid-1960s. Such stale allegations obviously cannot support plaintiff's claim that recent conduct on the part of defendant's agents resulted in physical harm to plaintiff. Accordingly, defendant's demurrer to count III will be sustained.

## IV

Lastly, plaintiff sues in assumpsit. While defendant challenges the lack of specificity in the complaint, we are reluctant to dismiss the action at this point. According to plaintiff's complaint, defendant failed to deliver the required quantity of gasoline. Many facts will need to be proved to sustain this action, but the evidence need not be demanded at such an early stage, prior to discovery. Resolution of a contract action, provided no facts are in dispute, is more appropriate at the summary judgment stage of the proceedings. We do agree, however, that plaintiff should aver his alleged special damages (e.g., bodily harm) with more particularity.

## V

Several other minor complaints have been registered by defendant in its preliminary objections. First, defendant questions the relevance of the allegations appearing in paragraphs 5-15 of plaintiff's complaint. These allegations concern alleged wrongs committed by defendant in 1963 and 1973-1974. Contrary to plaintiff's position, there is no evidence of a continuing wrong that would somehow render these averments relevant to either the tort or contract actions. Time has protected defendant from these charges if brought independently, and merely joining them with more recent actions does

not breathe new life into them. The averments are impertinent to the actionable matter, and accordingly will be stricken pursuant to Pa.R.C.P. 1017(b)(2).

Second, defendant cites plaintiff's failure to attach a copy of the lease referenced in paragraph 72 of the complaint. Since plaintiff's action is not based upon this lease, a copy need not be attached to the complaint. Hopewell Township School District v. Rolar, 10 Cumberland L.J. 78 (1959); Pa.R.C.P. 1019(h). Therefore, the absence of the lease is of no moment.

## ORDER OF COURT

And now, January 31, 1983, for the reasons appearing in the opinion filed this date, defendant's preliminary objections in the nature of a demurrer to counts II and III of plaintiff's complaint are hereby sustained. The demurrers to counts I and IV are overruled. Paragraphs 5-15 of plaintiff's complaint are hereby stricken. Plaintiff is given 20 days to file an amended complaint.