J-A22024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN F. TORNESE AND<br>J&P ENTERPRISES, | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| WILSON F. CABRERA-MARTINEZ, | : | |
| | : | |
| Appellee | : | No. 172 MDA 2014 |

Appeal from the Order Entered December 27, 2013,
In the Court of Common Pleas of Luzerne County,
Civil Division, at No. 2013-10204.

BEFORE: PANELLA, SHOGAN and FITZGERALD*, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 08, 2014**

John F. Tornese ("Tornese") and J&P Enterprises (collectively "Appellants"), appeal the trial court's order granting preliminary objections in the nature of a demurrer filed by Appellee, Wilson F. Cabrera-Martinez ("Cabrera-Martinez"). We affirm.

The trial court summarized the factual and procedural history of this case as follows:

On August 28, 2013, [Appellants] filed a Complaint against [Cabrera-Martinez]. The Complaint was premised upon an alleged contract between . . . J&P Enterprises, and Wendy Almanzar, the wife of [Cabrera-Martinez]. On October 18, 2013, [Cabrera-Martinez] filed Preliminary Objections to [Appellants'] Complaint. On October 28, 2013, [Appellants] responded to [Cabrera-Martinez's] original Preliminary Objections by filing an Amended Complaint. [Appellants'] Amended Complaint contains two counts, one for tortious interference with a contract and the

_____
*Former Justice specially assigned to the Superior Court.

other for terroristic threats. In response thereto, [Cabrera-Martinez] filed a second set of Preliminary Objections. [Appellants] did not file a Second Amended Complaint, choosing to rely on the Amended Complaint they filed on October 28, 2013, and filing the identical brief in opposition to the preliminary objections that [they] filed previously without referencing the new preliminary objections. The Court, on December 20, 2013, reviewed the matter, granted the Preliminary Objections and Dismissed [Appellants'] Complaint against [Cabrera-Martinez].[1]

[Appellants'] Amended Complaint is premised on a claim that . . . J & P Enterprises and Wendy Almanzar, the wife of [Cabrera-Martinez], entered into a contract for the delivery of an ATM machine and one lighted sign owned by [J&P Enterprises], but to be delivered to [Cabrera-Martinez's] business [Harlem World].

Trial Court Opinion, 3/21/14, at 1-2.

Appellants filed a timely notice of appeal from the trial court's order dismissing Appellants' amended complaint. The trial court ordered a Pa.R.A.P. 1925(b) statement and Appellants timely complied.

Appellants present the following issue for our review:

Whether the lower court erred by sustaining [Cabrera-Martinez's] preliminary objections in the nature of a demurrer and dismissing all of [Appellants'] claims, when [Appellants have] adequately pled all of [their] claims, including conversion, tortious interference with contractual relations, and intentional infliction of emotional distress?

Appellants' Brief at 9 (full capitalization omitted).

---

[1] The court's order granting Cabrera-Martinez's preliminary objections was entered on December 27, 2013.

We must first consider whether Appellants' claims are properly before this Court. Although Appellants present a single issue, the claim consists of three distinct questions: 1) whether Appellants adequately pled a claim of conversion; 2) whether Appellants adequately pled a claim of tortious interference with contractual relations; and 3) whether Appellants adequately pled a claim of intentional infliction of emotional distress. Appellants' Brief at 9. Indeed, the argument section of Appellants' brief consists of three subparts, each providing argument in support of these three individual claims. *Id.* at 12-23.

As mentioned previously, however, Appellants' amended complaint contained two counts: one for tortious interference with a contract and the second for terroristic threats. Amended Complaint, 10/28/13, at 1-4. Thus, the claims raised in Appellants' appellate brief for conversion[2] and intentional infliction of emotional distress, were not raised in Appellants' amended complaint, and thus are not properly before this Court for review. ***See***

---

[2] Appellants assert that although they raised the issue of conversion in the body of the amended complaint, the trial court "completely ignored" their claim of conversion. Appellants' Brief at 13. As noted, Appellants' amended complaint included two counts: Count One - Tortious Interference [With] Contract; and Count Two - Terroristic Threats. Amended Complaint, 10/28/13, at 1-4. The trial court did not have a duty to scour the complaint and uncover all potential claims therein. ***Steiner v. Markel***, 968 A.2d 1253, 1258 (Pa. 2009). Accordingly, the trial court properly declined to address the alleged claim of conversion.

-3-

Pa.R.A.P. 302(a) (Issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

Furthermore, Appellants fail to present as an issue in their appellate brief the trial court's ruling on the averment of terroristic threats. Accordingly, the only issue properly before this Court for review is Appellants' allegation that they adequately set forth a claim of tortious interference with contractual relations and, therefore, the trial court erred in granting the preliminary objections.[3]

Appellants maintain that they have adequately pled a claim for tortious interference with **actual** contractual relations, establishing each of the four requisite elements.[4] Appellants' Brief at 14-19. Thus, Appellants contend the trial court erred in granting the preliminary objections and dismissing Appellants' amended complaint. *Id.*

---

[3] We note that although Appellants fail to specifically identify the claim for intentional interference with an existing contractual relation as an issue they were pursuing on appeal, we conclude that in reading the Pa.R.A.P. 1925(b) statement, the claim is fairly pled. Plaintiffs' Concise Statement of Matters Complained of on Appeal, 2/12/14, at 1-2. Thus, we decline to find this issue waived. ***See Commonwealth v. Hill***, 16 A.3d 484, 491 (Pa. 2011) (quoting ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998)) (holding "[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.").

[4] ***See Phillips v. Selig***, 959 A.2d 420 (Pa. Super. 2008) for discussion of claims of interference with prospective contractual relations versus claims of interference with existing contractual relations.

Our standard of review of an appeal from the grant of preliminary objections is as follows:

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Discover Bank v. Stucka*, 33 A.3d 82, 86 (Pa. Super. 2011). It is well-established that a plaintiff must provide sufficient factual averments in his or her complaint to sustain a cause of action. *Feingold v. Hendrzak*, 15 A.3d 937, 942 (Pa. Super. 2011). "Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." *Id.* at 942.

The elements necessary to a cause of action for interference with existing contractual relations are as follows:

(1) the existence of a contractual relationship between the complainant and a third party;

(2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual damage as a result of defendant's conduct.

***Phillips***, 959 A.2d at 429 (Pa. Super. 2008).

In an attempt to establish the first element, Appellants contend that they have "clearly pled the existence of a contractual relation between the complainant and a third party, satisfying prong one." Appellants' Brief at 17. In support of this claim, Appellants cite to paragraph 5 of their amended complaint, which provides:

> The Plaintiff, J & P Enterprises, entered into a contractual agreement with Wendy Almanzar for her placement and maintenance of an ATM terminal at Harlem World.

***Id.*** Appellants' citation to their **claim** in the amended complaint that there was a contractual agreement with Wendy Almanzar, however, does not establish that there was, in fact, a contractual agreement with Wendy Almanzar.

Rule 1019 of Pennsylvania Rules of Civil Procedure provides, in relevant part, as follows:

**Rule 1019. Contents of Pleadings. General and Specific Averments**

* * *

(h) When any claim or defense is based upon an agreement, the pleading shall state specifically if the agreement is oral or written.

> *Note*: If the agreement is in writing, it must be attached to the pleading. See subdivision (i) of this rule.

(i) When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing.

Pa.R.C.P. 1019. Furthermore, "a contract implied in fact is a contract arising when there is an agreement, but the parties' intentions are inferred from their conduct in light of the circumstances." **Rambo v. Greene**, 906 A.2d 1232, 1236 (Pa. Super. 2006).

Here, despite the claim being based on an agreement, Appellants have failed to state whether the agreement was oral or written pursuant to Pa.R.C.P. 1019(h). Furthermore, if the agreement was written, Appellants failed to attach any such writing, or an explanation for its absence, to their amended complaint pursuant to Pa.R.C.P. 1019(i). Moreover, Appellants failed to sufficiently plead or establish that there was an implied contract. In fact, Appellants have provided no details regarding the alleged arrangement, such as the date the ATM and sign were placed at Harlem World, the duration of the agreement, and any arrangement for payment between the

parties. As such, Appellants have failed to sufficiently plead the existence of a contractual relationship between the parties. *See Foster v. UPMC South Side Hosp.*, 2 A.3d 655, 666 (Pa. Super. 2010) (trial court properly granted preliminary objections in the nature of a demurrer where plaintiff failed to establish that a contract existed for purposes of a claim of intentional interference with a contract because the complaint failed to provide a scintilla of information regarding the purported contractual relationship). Accordingly, we conclude that Appellants failed to establish the first prong necessary to a claim of interference with actual contractual relations.

Additionally, we note that Appellants allege that the contractual relationship was between Appellants and Wendy Almanzar ("Almanzar") and maintain that "[Appellants] entered into a contractual agreement with Wendy Almanzar for her placement and maintenance of an ATM terminal at Harlem World." Appellants' Brief at 15; Amended Complaint, 10/28/13, at ¶ 5. Furthermore, Appellants assert that Almanzar is married to Cabrera-Martinez and advised Appellants that she had authority to place the ATM at Harlem World. *Id.*; Amended Complaint, ¶¶ 5, 6. Appellants maintain that, at the direction of Almanzar, Appellants placed the ATM at Harlem World. *Id.*; Amended Complaint, at ¶ 7.

There is no allegation in the amended complaint or evidence of record that establishes Almanzar's relationship to Cabrera-Martinez and Harlem

World other than the allegation that she was married to Cabrera-Martinez. Despite Appellants' allegation that Almanzar advised Appellants that she had authority to have the ATM placed at Harlem World, there is no claim or evidence of record that she did, in fact, have authority to act on Harlem World's behalf.

However, even presuming that Almanzar had authority to allow J&P Enterprises to place the ATM at Harlem World, it would not be unreasonable to conclude that she was acting as agent for Harlem World.[5] Followed to its logical end, if Almanzar was acting as agent for Harlem World, there was no third party as is required by the first element. Appellants cannot have it both ways: they cannot argue on one hand that Almanzar had authority on behalf of Cabrera-Martinez and Harlem World to have the ATM placed there, but then, on the other, argue that Almanzar was the third party with whom they contracted and Cabrera-Martinez acting on Harlem World's behalf interfered with that contractual relationship.

Next, Appellants assert that Cabrera-Martinez specifically intended to harm the existing contractual relationship, thus satisfying prong two. Appellant's Brief at 17. Appellants claim that when they demanded return of the ATM, Cabrera-Martinez refused to allow Appellants to retrieve the ATM. *Id.* at 17. Additionally, Appellants argue that Cabrera-Martinez's threat to

---

[5] Without details regarding the contract, it is impossible to determine in what, if any, capacity Almanzar acted on behalf of Harlem World.

-9-

shoot Tornese if he attempted to retrieve the ATM constituted "improper conduct," satisfying the third element. *Id.* at 19.

This Court has provided the following guidance when analyzing the second and third prongs of a claim for intentional interference with contractual relations:

> The second element requires proof that the defendant acted 'for the specific purpose of causing harm to the plaintiff.' ***Phillips v. Selig***, 959 A.2d 420, 429 (Pa. Super. 2008) (quoting ***Glenn v. Point Park College***, 441 Pa. 474, 272 A.2d 895, 899 (1971)). The second element of this cause of action is closely intertwined with the third element, which requires a showing that Appellant's actions were not privileged. ***See*** Restatement (Second) of Torts § 766. Thus, in order to succeed in a cause of action for tortious interference with a contract, a plaintiff must prove not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper. In determining whether a defendant's actions were improper, the trial court must take into account the following factors listed in Restatement (Second) of Torts section 767:
>
> > (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.
>
> Restatement (Second) of Torts § 767; ***see, e.g., Adler Barish Daniels Levin & Creskoff v. Epstein***, 482 Pa. 416, 393 A.2d 1175, 1184 (1978); ***Phillips***, 959 A.2d at 429–30.
>
> Courts require a showing of both harm and improper conduct because we have recognized that some intentionally harmful conduct is done "at least in part for the purpose of

protecting some legitimate interest which conflicts with that of the plaintiff." ***Phillips***, 959 A.2d at 430.

***Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.***, 71 A.3d 923, 933-934 (Pa. Super. 2013).

In the case *sub judice*, the trial court provided the following analysis regarding these two prongs:

> A review of [Appellants'] Complaint discloses that [Appellants] have failed to state a claim for the intentional interference with a prospective contractual relation because Count 1 fails to contain a sufficient allegation of specific intent. Glenn [***v. Point Park College***], 272 A.2d [895,] 899 [(Pa. 1971)]. [Appellants] do not plead any allegation that [Cabrera-Martinez] knew or had knowledge of any contractual relationship between [Appellants] and Wendy Almanzar. There is no allegation that [Cabrera-Martinez] intended to cause harm to [Appellants]. The [Appellants] plead that there was harm but not that [Cabrera-Martinez] intended to harm [Appellants].
>
> The Supreme Court of Pennsylvania has held that in order to state a claim for tortious interference with a contract, there needs to be an allegation that [Cabrera-Martinez] acted with 'the specific purpose of causing harm to the Plaintiffs. Glenn, 272 A.2d 899 ("the wrong ordinarily requires conduct intended to interrupt negotiations or prevent the consummation of the contract").' . . . At most, [Appellants] plead, in paragraph 17, that the "conduct of [Cabrera-Martinez] in converting [Appellants'] property was intentional, willful, wanton and outrageous", but this is insufficient to state a cause of action under this theory. In Glenn, the court ruled that even an allegation that the [d]efendant "intentionally, wrongfully, and maliciously . . . interfered with a prospective contractual relationship"[6] was insufficient because there was no allegation

---

[6] We note that ***Glenn*** involved an allegation of interference with **prospective** contractual relationship wherein the case at hand involves a claim of interference with **existing** contractual relationships. The analysis in **Glenn** as to the second and third elements, however, is helpful and relevant

-11-

that the [d]efendant intended to cause harm to the [p]laintiffs. There is nothing in the pleading to suggest that [Cabrera-Martinez] intended to cause harm to [Appellants] or its business, even if harm was inevitable by the actions of [Cabrera-Martinez]. Moreover, there is no allegation in the Amended Complaint regarding whether [Cabrera-Martinez's] actions were made with or without "privilege or justification."

Trial Court Opinion, 3/21/14, at 2-3.

We agree with the trial court's analysis. Here, there is no allegation that Cabrera-Martinez acted with the intent to harm Appellants by interfering with the alleged contractual relationship. In fact, it is unclear that Cabrera-Martinez was even aware of the alleged contractual relationship. Appellants have failed to allege that Cabrera-Martinez's actions of refusing to allow Appellants to retrieve the ATM were not privileged. The complaint as drafted does not negate the existence of privilege on the part of Cabrera-Martinez. *Glenn*, 272 A.2d at 900. Indeed, as our Court has recognized, "some intentionally harmful conduct is done 'at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff.'" *Empire Trucking Co., Inc.*, 71 A.3d at 933-934.[7]

_____

to our inquiry here as the second, third and fourth elements of both claims are the same. *See Phillips*, 959 A.2d at 428-430 (outlining requirements for allegations of interference with prospective contractual relations and allegations of interference with existing contractual relations.)

[7] We make no ruling regarding Appellants' claim that Cabrera-Martinez's conduct was not privileged and was improper when he threatened to shoot Tornese. While such behavior, if true, would obviously be "improper," we note references to two "personal" visits by Tornese, and we decline to

As such, we conclude that Appellants have failed to satisfactorily plead facts establishing the second and third prongs of the cause of action for intentional interference with existing contractual relations. Accordingly, the trial court properly granted Cabrera-Martinez's preliminary objections in the nature of a demurrer.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2014

---

speculate as to what may have occurred during these exchanges and fueled subsequent interactions between the parties. Furthermore, given our conclusion that Appellants have failed to establish the first and second elements of his claim, a decision regarding this allegation is not necessary to the disposition of this case.