IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Kane,                    :
          Appellant          :
                           :    No. 862 C.D. 2020
       v.                  :
                           :    Submitted: August 6, 2021
Edmond Pisani, Jr.            :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: May 24, 2022

Vincent Kane (Kane) appeals from the May 28, 2020 order of the Court of Common Pleas of Delaware County (trial court), granting summary judgment in favor of Detective Edmond Pisani, Jr. (Detective Pisani) on Kane's claim against him for intentional interference of contractual relations. Upon review, we affirm.

**Background**

In an apt and able fashion, the trial court set forth the background and factual gist of this case as follows:

> This case was initiated on March 5, 2019, when [Kane] filed the written complaint. The complaint in this matter related to a defendant's right in a criminal proceeding to inspect, examine, and test evidence prior to trial [and] raised one count [against Detective Pisani]—tortious interference with contractual relations.

. . . .

[This matter concerns] an underlying criminal case against [Kane] in which [Detective Pisani] was the lead detective. [*See Commonwealth v. Kane* (Del. Cnty, CP-23-CR-702-2017, filed April 20, 2018) (unreported), slip op. at 5-6, 23-24 (*Kane I*), *aff'd*, 210 A.3d 324 (Pa. Super.) (*Kane II*), *appeal denied*, 218 A.3d 856 (Pa. 2019)]. It is integral to this case to note that [Detective Pisani] was hired as an employee, and remains as such, by the Delaware County Office of the District Attorney in 2010 as a Criminal Investigation Detective [] and that he is also a certified Forensic Examiner. [Detective Pisani] was the Affiant for the Affidavit of Probable Cause for [the] arrest of [Kane].

On September 22, 2016, Villanova University Police turned over to the Delaware County Criminal Investigation Division (CID) a cell phone that had been found in a women's restroom. [Detective Pisani] was the [d]etective assigned to this case and was the [d]etective responsible for conducting a forensic examination of the cellular telephone. [Detective Pisani's] investigation led to him identifying [Kane] as the owner of the cellular telephone. [Detective Pisani], during his investigation of the cellular telephone and in his official capacity, discovered pornographic videos on the phone that [Kane] had secretly recorded at Villanova University and Cardinal O'Hara High school bathrooms. [Detective Pisani] was able to obtain a search warrant for external hard drives that were located at [Kane's] home and, subsequently, additional pornography was found on a personal laptop and home computer that was owned or used by [Kane].

Based upon the investigation of the cellular telephone and the external hard drives, on October 26, 2016, [Detective Pisani] authored . . . the criminal complaint against [Kane].

On March 30, 2017, an offer was proffered to [Kane's] criminal attorney from the Delaware County [Assistant] District Attorney [(ADA)] prosecuting [Kane's] criminal case, Christopher Boggs (ADA Boggs). In the offer, which was transmitted via email, ADA Boggs states:

2

> All of the discovery is ready to be viewed in [the] CID. To view the discovery all you need to do is contact the detectives on the case and give them some dates that you are free to come in. Once they confirm with you a date, please let me know. I will make sure that when you come, there will be a packet with all of the discovery that does not contain contraband, that you may take with you that day. The forensic report with contraband and all the digital discovery with contraband must be viewed in [the] CID. I encourage you to bring an expert with you to review the materials. If you do, [he/she] must bring [his/her] own equipment to do [his/her] own examination.

[Kane's] [c]ounsel was further advised that the contacts regarding viewing the discovery in [the] CID were [Detective Pisani] and his supervisor, Detective Ken Bellis [(Detective Bellis)].

On September 11, 2017, computer forensic experts, Loehrs & Associates (Loehrs)[,] were retained to provide their expertise in the underlying criminal case. Loehrs was paid ten thousand dollars ($10,000.00) to produce an expert report to use at [Kane's] trial. A contract with Loehrs, which took the form of a letter engagement, was signed on September 11, 2017, by [Kane].

Loehrs was advised prior to arriving on location at [the] CID that [it] were required to use [the] CID computers on the days of analysis, as this was standard practice. Loehrs was also advised that [its] request to have the evidence shipped to Arizona for review was denied. The request of Loehrs to have the evidence shipped was denied by [Detective Pisani's] supervisor[, Detective Bellis,] and not by [Detective Pisani] himself. [Detective Pisani's] supervisor also made the decision that Loehrs would be limited to four (4) hours a day investigation time. This was also brought to the attention of ADA Boggs.

Michelle Bush [Bush], who was the investigator Loehrs sent to [the CID], was not supervised by [Detective Pisani] in any way during her examination. [Detective Pisani] did not set up the computer that [] Bush used to conduct the examination. [] Bush arrived at the CID, utilized the computers and equipment provided by [the] CID, [] conducted whatever examination she was able to accomplish in the hours set forth and established, and she did not return for further investigations.

On November 14, 2017, two weeks before the scheduled criminal trial date, [Kane's] criminal attorney filed a Motion to Compel based upon the belief that the defense should have been able to bring [its] own computer to do the forensic examination and that [it] should not have been restricted to four (4) hours examination time a day. During the argument on [the motion], the criminal attorney for [Kane] argued to the [] judge that he interpreted the email from ADA Boggs to mean that Loehrs could bring [its] own computer laptop with [its] forensic software already loaded on to it. [However, Kane's counsel] did not confirm this interpretation with ADA Boggs or [Detective Pisani]. [Detective Pisani] testified that, in his experience, all the defense experts were required to use the CID computer because child pornography is controlled contraband and there would be no way to ensure that [the] contraband did not leave the investigation room. [Kane's counsel] also claimed that the CID equipment was antiquated and incompatible hardware. The defense for [Kane] produced a declaration from Loehrs examiner, Bush, to substantiate [its] claim.

The Motion to Compel was heard by [a judge in the criminal division in the court of common pleas] on November 20, 2017. The decision by the [c]riminal [c]ourt found that ADA Boggs had informed [Kane] in its March 30th letter that an expert could come to [the] CID for the examination, yet it was not until five and a half months later that Loehrs' examiner[,] Bush[,] appeared. The [c]riminal [t]rial [j]udge also found that the expert had to use the computer provided by [the] CID and, that if [it] wanted to conduct further examination, [it] could do so before the scheduled trial date of November 28, 2017. [Ultimately, the

4

criminal court denied Kane's Motion to Compel. *See Kane I*, slip op. at 5-6, 23-24[1]].

---

[1] In relevant part, the criminal court explained that Kane had been granted two continuances while he hired, through the assistance of his father, two computer forensic experts. According to the criminal court, one expert resigned, and the record does not reflect what transpired with the other expert. Eventually, Kane secured the services of a third computer forensic expert, Loehrs. Kane's counsel at that time then filed a motion to withdraw, which was later granted, and the Motion to Compel, alleging "that the Commonwealth did not provide [Kane's] chosen forensic expert, Loehrs [] of Tucson, Arizona[,] adequate time, access, and the specialized equipment it considered necessary to perform its analysis of the electric evidence." *Kane I*, slip op. at 5. In the Motion to Compel, Kane's counsel requested the criminal court "to compel the Commonwealth to create and provide mirror forensic copies of [Kane's] cellphone, desktop computer, and external hard drive." *Id.* In detailing the procedural history of the criminal case, the criminal court continued:

> On September 12, 2017, a representative of Loehrs made arrangements to view the electronic evidence on October 3 & 4, 2017 in the CID offices. Loehrs was advised that [it] would be allowed four hours of time each day to conduct [its] examination. A Loehrs representative replied that the time afforded would be inadequate and asked that the Commonwealth ship the evidence to a secure government facility in Arizona. Detective Pisani responded that this request would not be accommodated and that the original evidence would be available for viewing only at [the] CID offices. [] Bush, a Loehrs employee, arrived at the CID offices on October 3, 2017. In an affidavit attached to the [M]otion to [C]ompel, [] Bush attested that she was unable to complete her forensic analysis and claimed that this was due to the fact that she "had to install software drivers and applications needed for basic operation and essential functions of the examination . . . and specialized forensic tools and licensing for the purpose of conducting [her] forensic examination." [] Bush described her difficulties in completing her task at great length and claimed that Detective Pisani had "unrestricted access to [her] work product for several hours." To summarize, she complained that she was offered inadequate, unsophisticated equipment and inadequate time and access to complete her task. A hearing was convened on November 20, 2017. The Court ruled that the evidence would be made available to [Kane's] expert in the CID offices for immediate inspection. Loehrs could choose to use its own tools or to use the tools that were available in [the] CID. The trial date would not be continued.

**(Footnote continued on next page…)**

5

[Kane] was subsequently convicted of five counts of invasion of privacy, three counts of possession of child pornography, and two counts of criminal use of communication facilities following his non-jury trial on

_____

**(continued…)**

*Id.* at 5-6.

In its Pa.R.A.P. 1925(a) opinion, the criminal court determined that it did not err in denying Kane's request for a continuance or the Motion to Compel, reasoning as follows:

[Kane's] [M]otion to [C]ompel was scheduled for a hearing on November 20, 2017. At the November 20, 2017 hearing, the court considered [Kane's] request for another continuance to allow time for Loehrs [] to complete its forensic analysis in Delaware County. When denying [Kane's] request, the Court noted that the evidence in question was made available to the defense in March of 2017. Six months later a Loehrs analyst arrived in the CID offices to conduct her examination. Although the [ADA] advised in March that an expert would have to bring the equipment necessary to conduct its analysis[,] the Loehrs analyst arrived unprepared and then objected to having to use computer software that she considered antiquated. As the history of this case set forth above indicates, [Kane] apparently had difficulty finding and retaining an expert who would provide evidence that he considered satisfactory. [Kane's] inability in this regard was not grounds for further delay of trial.

. . . .

Similarly, the Court did not commit an abuse of discretion when it denied [Kane's] [M]otion to [C]ompel discovery. The electronic evidence was available to [Kane]. The Commonwealth did not act in bad faith when, on the eve of trial it did not agree to ship the evidence to Arizona. [Kane's] alternative request that the Commonwealth, at great expense, create and provide mirror forensic copies of [Kane's] cellphone, desktop computer, and external hard drive was unreasonable under the circumstances.

*Id.* at 24-25.

6

November 28, 2017, before [the criminal trial judge]. [Kane] was sentenced on February 16, 2018. That conviction and sentence was affirmed on appeal on May 9, 2019, in [*Kane II*], and the Supreme Court denied [Kane's] petition for allocatur. This Court notes that [Kane] failed to raise any issue related to the denial of the Motion to Compel that was argued before and ruled upon by [the] [c]riminal [j]udge. The only issues raised in the direct appeal were related to the Motion to Suppress; therefore, [Kane] is bound by the decision of [the] [c]riminal [j]udge related to the issue of the denial of the Motion to Compel.

The case *sub judice* was filed on March 19, 2019, by [Kane] against [Detective Pisani]. In the civil complaint, [Kane] alleges that [Detective Pisani] intentionally and unilaterally provided [Kane's] experts with equipment that was inadequate and antiquated and unduly restricted [the expert's] examination to daily limits of four (4) hours. It is for [these reasons] that [Kane] claims [Detective Pisani] tortuously interfered with his and Loehrs contractual relations.

(Trial court op. at 2, 4-8.)

After the complaint was filed, the case was scheduled to proceed to an arbitration hearing on December 4, 2019. On March 8, 2019, Detective Pisani filed a preliminary objection in the nature of a demurrer, which was overruled per an order of the arbitration panel. Thereafter, on September 12, 2019, Detective Pisani filed an answer and new matter, and Kane replied to the new matter on September 30, 2019. On October 11, 2019, Kane took the deposition testimony of Detective Pisani. Then, on November 19, 2019, Kane filed a motion for leave to amend his complaint, pursuant to Pa.R.Civ.P. 1033, arguing that Detective Pisani could be held jointly and severally liable with his direct supervisor, Detective Bellis, and seeking to add the latter as a party-defendant. Kane also requested a continuance. On November 21, 2019, an order was entered denying Kane's request for leave to amend and, also, for a continuance. With regard to the former, the arbitration panel cited Delaware County

7

Rule of Civil Procedure 1303(f), which provides that "[a]ll motions, with the exception of applications for continuance, must be filed no later than thirty (30) days before the hearing date." *Id.* (Trial court op. at 3; Reproduced Record (R.R.) at 233a.)

On December 4, 2019, a panel of arbitrators heard the case, at the conclusion of which it found in favor of Detective Pisani. Kane then appealed the award of the arbitrators to the trial court. On January 31, 2020, the trial court entered a supplemental trial assignment and case management order. In due course, Detective Pisani filed a motion for summary judgment on April 15, 2020, asserting that Kane failed to state a cause of action for intentional interference with contractual relations as a matter of law; Kane's cause of action was barred by the doctrine of collateral estoppel; and Detective Pisani was entitled to governmental and/or prosecutorial immunity. Kane filed an answer and response to the motion for summary judgment, arguing that genuine issues of material fact precluded the entry of summary judgment on the intentional interference with contractual relations claim. Kane further argued that Detective Pisani, by way of acting willfully and intentionally, and due to the nature of his employment, was not entitled to either prosecutorial or governmental immunity. Ultimately, by order dated May 28, 2020, the trial court granted Detective Pisani's motion for summary judgment. (Trial court op. at 4.)

Subsequently, Kane filed a notice of appeal,[2] and the trial court ordered Kane to file a concise statement of errors complained of on appeal in accordance with

---

[2] Kane filed his notice of appeal with the Superior Court, which, by order dated July 10, 2020, transferred the appeal to this Court.

Pa.R.A.P. 1925(b). Kane complied, and the trial court issued an opinion as required under Pa.R.A.P. 1925(a). (Trial court op. at 4.)

In its opinion, the trial court determined there were no issues of material fact; Kane failed to state a claim as a matter of law; the issues presented by Kane were barred by the doctrine of collateral estoppel by virtue of the criminal court's ruling on the Motion to Compel; and, even if there were an issue of material fact, and Kane was not collaterally estopped from raising his claim, Detective Pisani was entitled to prosecutorial immunity or governmental immunity under sections 8541 and 8542 of the Judicial Code, 42 Pa.C.S. §§8541-8542, commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act). (Trial court op. at 1-2, 19.) Throughout its opinion, the trial court stated that, in reviewing the record, "there [was] no evidence that [Detective Pisani] made any of the decisions personally that form the basis of the present civil claim . . . or [engaged in] any willful misconduct." *Id.* at 19.

## Discussion

Before this Court,[3] Kane argues that the trial court erred in granting summary judgment in favor of Detective Pisani in violation of the "*Nanty-Glo* Rule,"[4] determining that his claim was barred by the doctrine of collateral estoppel, finding

---

[3] "This Court's standard of review of a grant of summary judgment is *de novo*, and our scope of review is plenary. We apply the same standard for summary judgment as the trial court." *Gior GP, Inc. v. Waterfront Square Reef, LLC*, 202 A.3d 845, 852 n.10 (Pa. Cmwlth. 2019) "A grant of summary judgment is only appropriate where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

[4] *Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932).

that Detective Pisani was entitled to prosecutorial and/or governmental immunity, and failing to grant him leave to amend the complaint.

### The *Nanty-Glo* Rule

Kane argues that the trial court erred in relying on the testimonial affidavits of ADA Boggs and Detective Bellis in determining that Detective Pisani could not be imputed with making any decisions regarding Loehrs' ability to conduct a forensic examination. In this regard, Kane asserts that the trial court violated the "*Nanty-Glo* Rule."

"The '*Nanty-Glo* [R]ule' essentially means that the testimonial affidavits or depositions of the moving party's witnesses are insufficient by themselves to establish a material fact because the credibility of the testimony is still a matter for the jury." *Sanchez-Guardiola v. City of Philadelphia*, 87 A.3d 934, 937 (Pa. Cmwlth. 2014). Nonetheless, "when a motion for summary judgment is made and supported as provided in the rule, the adverse party may not rest only on the mere allegations or denials in his pleadings, but must set forth in his response by affidavits, or as otherwise provided, specific facts in dispute." *Id.* at 938 (internal citation and quotation marks omitted; emphasis omitted). As explained by our Superior Court:

> Initially, it must be determined whether the plaintiff has alleged facts sufficient to establish a *prima facie* case. If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally, it must be determined whether, in granting summary judgment, the trial court has usurped improperly the role of the [factfinder] by resolving any material issues of fact. **It is only when the third stage is reached that *Nanty-Glo* comes into play**.

*DeArmitt v. New York Life Insurance Co.*, 73 A.3d 578, 594-95 (Pa. Super. 2013) (internal citation omitted; emphasis added).

Here, our review of the record and the trial court's opinion reveals that the trial court did not rely solely on the affidavits of the moving party, Detective Pisani. Rather, the trial court, in notable part, relied upon the factual findings and conclusions of law made by the criminal court in connection with the Motion to Compel. More importantly, the trial court pointed out that Kane failed to adduce any evidence to support the inference that Detective Pisani was responsible for any of the decisions with regard to the procedures for forensic evidence testing at the CID facility with which Kane takes issue. Ultimately, because the trial court concluded that Kane did not submit sufficient evidence to support a *prima facie* claim for intentional interference with contractual relations, we conclude that the trial court's grant of summary judgment in favor of Detective Pisani did not run afoul of the *Nanty-Glo* Rule.

**Collateral Estoppel**

Kane also argues that the trial court erred in applying the doctrine of collateral estoppel to bar his claim. According to Kane, the issues of fact and law that were decided by the criminal court in ruling on the Motion to Compel are not identical to the issues raised in his civil action claim for intentional interference with contractual relations and, thus, collateral estoppel is inapplicable.

"The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action." *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50 (Pa. 2005). Typically, in order for collateral estoppel to apply, "the issue decided in the prior case [must be] identical to the one presented in the later action."

11

*Id.* At the same time, however, it is beyond cavil that issues of fact and/or law that are decided in connection with a criminal conviction are conclusive, and a criminal defendant is collaterally estopped from relitigating them in a subsequent civil proceeding. *See Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996). Therefore, to the extent Kane relies on the dichotomy between criminal and civil actions to argue that collateral estoppel cannot be used in this case, we reject that argument as meritless.

Moreover, and succinctly put, to state a claim for intentional interference with contractual relations, a plaintiff must, among other things, establish that a defendant, without a privilege to do so, induces or otherwise purposely causes a third person not to continue a business relation with another or specifically intends to harm the existing contractual relation. *Glenn v. Point Park College*, 272 A.2d 895, 897 (Pa. 1971); *Maverick Steel Co., L.L.C. v. Dick Corp./Barton Malow*, 54 A.3d 353, 354-55 (Pa. Super. 2012). Importantly, as an essential element of the tort, it is the plaintiff's burden to prove "the absence of privilege or justification on the part of the defendant." *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1025 (Pa. Cmwlth. 2016). In making such a determination, "[t]he issue in each case is whether the [defendant's] conduct is justifiable under the circumstances." Restatement (Second) of Torts §767, Comment b (American Law Institute 1979).

Here, Detective Pisani's deposition testimony, coupled with ADA Boggs' email to Kane's criminal attorney, established that the ADA and/or the CID had a reasonable and justifiable policy in confining all digital discovery with contraband, specifically pornographic images, to the CID facility. While Kane complains that the CID facility had inadequate computer infrastructure for Loehrs to complete its assessment of the data and/or images, and the timeframe that it was allotted was unduly restrictive, the criminal court already ruled on these exact same

12

issues and determined that the Commonwealth, particularly Detective Pisani, acted in good faith and in accordance with the law. *See supra* note 1. Moreover, in deciding Kane's Motion to Compel, the criminal court found that Kane unnecessarily delayed in conducting a computer forensic analysis, and that Loehr's analyst was unprepared and had no legal basis to object to the condition of the computer software at the CID facility.

Contrary to Kane's assertion, the underlying issues presented to and resolved by the criminal court are legally identical to those currently at issue in this case for purposes of collateral estoppel, and the above findings by the criminal court are entitled to preclusive effect. *See supra* note 1. Notably, this case did not involve any misrepresentations, unlawful behavior, or active interference through persuasion, manipulation, and/or physical destruction on the part of Detective Pisani—or anyone else for that matter—that is typically associated with a finding of improper interference with contractual relations, as opposed to justifiable conduct. *See* Restatement (Second) of Torts §767, Comment c. Therefore, because Kane failed to submit evidence sufficient to create a material issue of fact and demonstrate that Detective Pisani's conduct was not privileged and/or justified, and the trial court correctly applied the doctrine of collateral estoppel to determine that Detective Pisani's conduct was, as a matter of fact and law, privileged and/or justified, we conclude that the trial court did not err in granting summary judgment in favor of Detective Pisani.

### Leave to Amend

Kane asserts that the arbitration panel erred in denying him leave to amend his complaint to add Detective Bellis as a party-defendant. Initially, we are

hesitant to uphold the panel's ruling under Local Rule 1303(f), due to the broad liberality in granting leave to amend pursuant to Pa.R.Civ.P. 1033. *See Horowitz v. Universal Underwriters Insurance Co.*, 580 A.2d 395, 398-400 (Pa. Super. 1990). In any event, on the record as it stands, the Court cannot find reversable error in denying Kane leave to amend because "an amendment is properly refused where it appears amendment [would be] futile." *Weaver v. Franklin County*, 918 A.2d 194, 203 (Pa. Cmwlth. 2007). Here, even if Detective Bellis was inserted into the case as a defendant, and could be held solely liable or share apportioned liability with Detective Pisani, Kane's claim for intentional interference with contractual relations would still fail as a matter of law for the reasons set forth above.

### Prosecutorial and/or Governmental Immunity

As previously stated, we conclude that Kane's claim for intentional interference with contractual relations fails as a matter of law, under the doctrine of collateral estoppel and, also, because Kane did not adduce sufficient evidence to support that claim. Consequently, this Court need not decide whether Detective Pisani was entitled to a form of immunity that could independently bar Kane's claim for intentional interference with contractual relations.

### Conclusion

Accordingly, for the above-stated reasons, we affirm the trial court's order.

_____
PATRICIA A. McCULLOUGH, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Kane, : 
           Appellant : 
            :   No.  862 C.D. 2020
        v. : 
            : 
Edmond Pisani, Jr. : 

## *ORDER*

AND NOW, this 24ᵗʰ day of May, 2022, the May 28, 2020 order of the Court of Common Pleas of Delaware County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge